**UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellant,**

v.

**Rosemary D. TULL, Appellee.**

**No. 15963.**

Court of Civil Appeals of Texas, San Antonio.

Sept. 6, 1978.

Rehearing Denied Oct. 18, 1978.

---

Reese L. Harrison, Jr., John H. Tate, II, Oppenheimer, Rosenberg, Kelleher & Wheatley, San Antonio, for appellant.

James G. Murry, San Antonio, for appellee.

OPINION

KLINGEMAN, Justice.

This is a suit by Rosemary D. Tull, appellee herein, against United Services Automo-

*v. Robinson,* 470 S.W.2d 311 (Tex.Civ.App.— Waco 1971, no writ).

bile Association, appellant, for alleged damages arising out of the termination of her contract of employment. For convenience, appellee will be sometimes hereinafter referred to as "Tull" and appellant as "USAA." Trial was to a jury who in answer to special issues submitted found: (a) USAA did not have good cause to discharge Tull; (b) Tull was entitled to receive $8,365.66 as loss of earnings; (c) Tull was entitled to recover a Christmas bonus of $433.39; (d) Tull was entitled to recover $25,000 for mental pain and anguish in the past; (e) the conduct of USAA in discharging Tull was an act of malice; (f) Tull was entitled to recover exemplary damages in the amount of $25,000. USAA timely filed motions for instructed verdict, judgment non obstante veredicto, and to disregard certain jury findings, all of which were overruled by the court. The trial court entered judgment that Tull recover from USAA the sum of $59,058.99.

Appellant brings forth 33 points of error. Many of these points of error assert that appellant is entitled to a judgment as a matter of law and seeks a reversal and rendition. Other points of error seek a reversal and remand.

We will first consider appellant's points of error which seek a reversal and rendition. It is appellant's primary contention that the employment relationship between USAA and Tull was an oral contract for an indefinite term containing no contractual limitations, and was terminable at the will of either party, with or without cause. USAA asserts that the trial court erred as a matter of law in not granting its motion for instructed verdict or its motion for a judgment non obstante veredicto; that there is no evidence to support the submission of and the jury's answer to the material issues upon which the verdict is predicated; and that although under the type of employment here involved it is immaterial whether Tull's termination was for good cause, as a matter of law there was good cause for her termination.

The evidence shows that USAA employed Tull under an oral employment contract without any definite term being established, which was its practice with all employees. Over a period of years, Tull was promoted from time to time through various grade levels. Tull admitted that from the day she was hired her employment agreement was a "decent day's work for a decent day's pay" and that from her standpoint she could have terminated her employment and left her employment at USAA at any time.[1]

As an employee, Tull was instructed and trained in her job duties and the rules and regulations of her employer, USAA. Included in this training and instruction were the categories of membership in USAA's insurance for which employees were eligible for many types of insurance offered by USAA. As an employee, Tull was eligible for USAA insurance coverage and had availed herself of these benefits by insuring her automobiles, her house, personal property, life, and other coverage.

By May of 1975, Tull had progressed to a management position and was authorized to issue insurance binders obligating USAA for insurance coverage for fire and extended coverage on dwellings up to a limit of $100,000 without seeking approval from higher authority. All employees were instructed that they were never to handle or write their own insurance and employees were instructed to contact the technical assistants in the appropriate branch who would handle their insurance needs.

In April of 1975, Tull as agent and attorney-in-fact for her father, Benedict J. Danysch, went to Falls City, Texas, and purchased for her father a small house. A warranty deed was given by the seller to Benedict J. Danysch and filed for record in Karnes County, Texas. After her return to USAA, Tull prepared and executed a "binder" in her name and USAA number and under her signature, insuring her father's

---

1. In *Adair v. United States*, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436, the Court said: "The right of an employe to quit the service of the employer, for whatever reason, is the same as the right of the employer, for whatever reason, to dispense with the services of such employe."

house against fire and extended coverage and other perils for $5,000. The "binder" issued by Tull obligated USAA in the event of loss. Based on the binder, an insurance policy was issued.

During the summer and early fall of 1975, an underwriting risk review of all of Tull's insurance was initiated because of her high claims frequency and claims paid. Based on this risk review, a recommendation was made not to renew Tull's automobile coverage. Tull was notified by letter of the cancellation. Because of the automobile claims, a parallel risk review on other coverage was also undertaken and a recommendation was made that Tull's multiple lines coverage (like her house, personal property, and so on), not be renewed. During the risk review, the binder issued by employee Tull on her father's house was discovered by another USAA employee. A background investigation was made by her supervisor, Robert G. Goldsberry, which disclosed that the property which had been insured by employee Tull under her membership number was not in her name. Supervisor Goldsberry determined that immediate discharge procedures should be followed and employee Tull was informed of the violation complained of and informed that she was being immediately dismissed. Tull then initiated this case in the trial court.

Our Supreme Court in *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888), held:

It is very generally, if not uniformly, held, when the term of service is left to the discretion of either party, or the term left indefinite, or determinable by either party, that either may put an end to it at will, and so without cause.

The rule is set forth in 62 A.L.R.3d 271 (1975), as follows:

Despite its sometimes harsh operation and the obvious opportunities for abuse it affords an unscrupulous employer, few legal principles would seem to be better settled than the broad generality that an employment for an indefinite term is regarded as an employment at will which

may be terminated at any time by either party for any reason or for no reason at all. See, for example, the following cases: * * * *Tex—Bischel [Bichsel] v. Heard* (1959, Tex.Civ.App.) 328 S.W.2d 462; *Scruggs v. George A. Hormel & Co.* (1971, Tex.Civ.App.) 464 S.W.2d 730, error ref. n. r. e.; *NHA Inc. v. Jones* (1973, Tex.Civ.App.) 500 S.W.2d 940, error ref. n. r. e. * * *
—Annotation—Employee's Arbitrary Dismissal as Breach of Employment Contract Terminable at Will.

In *Scruggs v. George A. Hormel,* 464 S.W.2d 730 (Tex.Civ.App.—Dallas, writ ref'd, n. r. e.), the court said:

The summary judgment evidence before us is conclusive that the contract of employment between Scruggs and Hormel was verbal and for no definite period of time. In the absence of contractual limitations the employer Hormel had the authority to discharge Scruggs at will and with or without cause. [citing 38 Tex. Jur.2d, Master and Servant, § 12; *Kelley v. Southern Pacific Co.,* 429 S.W.2d 583 (Tex.Civ.App., El Paso 1968, no writ); *San Antonio Fire Fighters' Local Union No. 84 v. Bell,* 223 S.W. 506 (Tex.Civ. App., San Antonio 1920, writ ref'd); and *Robertson v. Panhandle & Santa Fe Ry. Co.,* 77 S.W.2d 1078 (Tex.Civ.App., Austin 1934, writ dism'd, w. o. j.)] (Scruggs at p. 731)

In *NHA, Inc. v. Jones,* supra, 500 S.W.2d 940 (Tex.Civ.App.—Fort Worth, writ ref'd, n. r. e.), the court held:

The settled law is that where an employee sues his employer for damages for the breach by the employer of an employment contract that is for an indefinite term of service, as are each of the contracts involved here, the loss of wages that would have been earned in the indefinite future is not a recoverable item of damages. This is so because such a contract can be legally terminated at will by either party.

For a good discussion of this type of employment relationship, see also *Cactus Feeders, Inc. v. Wittler,* 509 S.W.2d 934 (Tex.Civ.App.—Amarillo 1974, no writ).

The record establishes that Tull's employment contract with USAA was oral and for an unspecified, indefinite term. The undisputed evidence shows that: (a) Tull's attorney stipulated that an oral contract was involved here; (b) Marie Kelleher, a vice president of Personnel at USAA, testified that people are not hired under a written contract with USAA for a definite number of years, and that under an oral contract there is no time period; (c) Robert Goldsberry, vice president of Multiple Lines, at USAA, stated that his employment is for an indefinite time and that he may be fired at any time; (d) Tull stated that she had no written employment contract with USAA and that she felt she could terminate her employment at any time.

Under the undisputed testimony and the applicable authorities hereinbefore cited, the trial court erred in failing to grant appellant's motion for instructed verdict or its motion non obstante veredicto. Under the record herein and the applicable law, Tull cannot as a matter of law receive damages for her termination by USAA. This case must be reversed and rendered.

The judgment of the trial court is reversed and judgment here rendered that Tull take nothing against USAA.